KELLY, J.
(dissenting). I agree with the Court of Appeals that the trial court erred by denying defendant’s motions to suppress and to strike the evidence provided by Trooper Jason Varoni. The trooper’s questions of defendant were not reasonably related to the purpose of the traffic stop. Furthermore, defendant’s statement to the trooper that he was staying at a Holiday Inn in Cheboygan could not evoke a reasonable suspicion that he was engaged in criminal activity. Therefore, I would affirm the decision of the Court of Appeals.

TERRY v OHIO

Traffic stops are subject to the test established by the United States Supreme Court in Terry v Ohio, 392 US 1, 20; 88 S Ct 1868; 20 L Ed 2d 889 (1968). According to Terry, an officer’s investigation of a traffic stop must be “reasonably related in scope to the circumstances which justified the interference in the first place.” Id. A defendant may not be detained even momentarily without reasonable, objective grounds for doing so. Florida *320 v Royer, 460 US 491, 498; 103 S Ct 1319; 75 L Ed 2d 229 (1983). The scope of the detention must be carefully tailored to the justification for the stop. Id. at 500.
Considering the totality of the circumstances, I would find that the officer’s questioning in this case exceeded the permissible legal scope of inquiry regarding a speeding offense. It was not reasonably related to defendant’s violation of the speed limit. Furthermore, I believe that the answers to the officer’s questions did not give rise to an articulable suspicion that criminal activity was afoot.
SCOPE OF THE STOP
Trooper Varoni detained defendant for driving in excess of the speed limit. An additional reason for the stop was that his vehicle had a cracked windshield. There was no reasonable articulable suspicion of any other offense.
Neither the United States Supreme Court nor the Michigan Supreme Court has ever ruled that questioning beyond the scope of a traffic stop is allowed. The Court of Appeals decision in this case accurately reflects Michigan law. However, with this decision, the Court changes Michigan law to enlarge the permissible scope of an inquiry by a police officer during a routine traffic stop.
PERMISSIBLE QUESTIONING
The questions “Why the rush?” and “Where are you headed in such a hurry?” from a police officer may be reasonably related to a traffic stop for speeding. They seek an admission of speeding.
But questions about a driver’s destination, purpose, length of stay, and with whom he will be staying are *321 meant to inquire into issues beyond a speeding offense. Not only have they nothing to do with a speeding offense, they are not helpful to a police officer’s decision to release the driver or to issue a citation or warning.[1] Ante at 316.
On direct examination, Trooper Varoni testified that he asked defendant where he was going and that defendant offered that “he was going into Cheboygan to visit friends and that he was staying at the Holiday Inn.” However, it is apparent from the cross-examination of Trooper Varoni that defendant did not volunteer this information to the trooper in response to a general question. Instead, as Trooper Varoni admitted:
A. Uh, it’s — it’s my practice to ask more than just for those three pieces of uh, documentation [referring to license, registration, and insurance paperwork].
Q. All right. And then you proceeded to further this investigation by questioning Mr. Williams as to um, issues of where he was going and what he was going to do when he was there, is that correct?
A Yes.
Q. And these questions weren’t relevant to how fast he was going, were they?
A. I-I ask everybody I stop where they’re going to and where they are coming from.
*322 Q. My question was; the question about where he’s going and how long he is staying is not relevant to how fast he’s going and the purpose for your stop; is it?
A. That’s correct.
Without question, the trooper asked defendant questions that exceeded the scope of legal inquiry regarding a speeding offense. The trooper evoked an answer regarding the location where defendant was planning to spend the night. He also asked defendant if defendant had any prior narcotics convictions. Trooper Varoni testified:
Um, I asked him if he had been in trouble before and uh, he told me that he had. I asked if it had any — you know, related narcotics [sic], if he’d ever been arrested for anything to do with drugs and he told me that he had. I asked him for what and he said marijuana.
This question likewise was unrelated to the purpose of the traffic stop. Once defendant stated that he was staying at a Holiday Inn in Cheboygan in response to a question about where he would spend the night, the purpose of the investigation changed. Trooper Varoni’s subsequent questions, having nothing to do with the scope of the traffic stop, changed the fundamental nature of the stop. What began as a routine traffic stop became an all-encompassing criminal investigation. Trooper Varoni admitted it:
Q. Your purpose of the initial stop had seized [sic]; you weren’t investigating speeding violation [sic] anymore were you?
A. No, no I wasn’t.
REASONABLE SUSPICION OF CRIMINAL ACTIVITY
Even if Trooper Varoni’s questions had been appropriate for a traffic stop, a second pertinent concern for *323 the Court is whether defendant’s answer provided a reasonable suspicion that criminal activity was occurring.
Trooper Varoni essentially admitted that he continued questioning the occupants of the vehicle on the basis of a hunch that something “wasn’t quite right.”
Q. [Mr. Kwiatkowsi]: Is it possible that he was in error as to where the Holiday Inn was?
A [Trooper Varoni]: That’s possible, yes.
Q. And the fact that someone misstates where they’re staying um, you’re saying that made you suspicious of him, is that right?
A Uh, you — you can call it what you want, I don’t know about suspicious but, yeah, it made me think twice about the statements he made.
Q. All right, so you weren’t suspicious?
A Yeah, I-I questioned his statements.
Q. Well, now when you’re talking about suspicion you understand suspicious of something, right? Of some activity that’s unlawful, right?
A Yes, that could be.
Q. Well, what was it about that response that you were suspicious of that was unlawful?
A I wasn’t suspicious of any particular thing that was unlawful.
Q. So it was unparticularized suspicion is that what you’re saying?
A. Um, I guess that could be.
Q. Okay. Because you couldn’t put your finger on what it was you were suspicious of, right?
A. I was suspicious that something wasn’t quite right.
Q. But you didn’t know what it was, right?
A That’s right.
*324 The trooper’s intuition that “something wasn’t quite right” and his observation that no luggage was visible in the passenger compartment were the things that made him suspicious. The trooper admitted that it is not uncommon for people to carry luggage out of sight in the trunk. Therefore, the only valid reason for the tr.ooper to be suspicious was defendant’s statement that he was staying at a Holiday Inn in Cheboygan.
The fact that defendant answered with the name of a hotel chain that did not have a facility in Cheboygan hardly created a reasonable suspicion that criminal activity was afoot.[2] The next question of defendant, once he had stepped out of the vehicle, was whether he had any prior conviction for drugs. It was likewise unrelated to the traffic stop. This question is a further indicator that the trooper was acting on a mere hunch.
Where there is no articulable basis to suspect that a crime is being committed, the officer’s questions amount to nothing more than a fishing expedition. The questioning and the subsequent search in this case went beyond the scope of the traffic stop and were unsupported by any reasonable articulable suspicion.
I agree with the Court of Appeals that, given the totality of the circumstances, the trooper had insufficient grounds for pursuing an investigatory stop and *325 conducted his investigation based merely on a hunch. People v Champion, 452 Mich 92, 98; 549 NW2d 849 (1996). I would affirm the decision of the Court of Appeals.

 The majority cites several federal circuit court of appeals cases for the proposition that questions about travel plans are reasonably related to the scope of a traffic stop. We are not bound by these decisions, and, as noted above, I find their logic defective.

 It is noteworthy that the explanations Mr. Williams and his two passengers gave are not as inconsistent as the prosecution would have the Court believe. Mr. Williams indicated that they were going to Cheboygan to visit friends and would be there “about two days.” They would be staying at a Holiday Inn. His companion, Mr. King, indicated that he was not sure how long they were going to be gone. This is not inconsistent with defendant’s statement.
Mrs. Williams indicated that they were planning to do some shopping in Cheboygan. She was not sure where they were staying; they did not have reservations. This is also not inconsistent with Mr. Williams’s explanation.